## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION


DALE RICHARD PATE,

      Petitioner,

v.                            CASE NO: 8:11-CV-2867-T-30MAP

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

_____/


### ORDER

      Petitioner, Dale Richard Pate, an inmate in the Florida penal system proceeding *pro se*, brings this amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. #7). The Court has considered the amended petition, Respondents' amended response (Dkt. #35), Pate's reply (Dkt. #38), and the supplement to his reply (Dkt. #41). Upon review, the Court determines that the petition must be denied because Pate's claims are procedurally barred or fail on the merits.

### BACKGROUND

      Pate was charged by amended information with kidnapping, felony aggravated assault, and grand theft from a person sixty-five years of age or older. On February 2, 2007, after a jury trial, Pate was found guilty of kidnapping, assault and grand theft. On April 16, 2007, he was sentenced to concurrent terms of life imprisonment for the kidnapping, time served for the assault, and thirty years imprisonment for the grand theft.

On November 2, 2007, Pate's counsel filed an initial brief on direct appeal raising

the following claims:

**Issue One:**    Whether the trial court failed to conduct an adequate *Faretta* inquiry;

**Issue Two:**    Whether the State's multiple discovery violations required reversal;

**Issue Three:**  Whether the admission of hearsay testimony concerning Pate's wage history, offered by the State to prove Pate's motive for the alleged kidnapping, constituted reversible error;

**Issue Four:**    Whether the admission of hearsay statements made by the victim resulted in reversible error; and

**Issue Five:**    Whether Pate was unfairly prejudiced by the State's filing of an amended information adding a new count on the day trial began.

The state appellate court affirmed Pate's conviction and sentence *per curiam* on

April 15, 2008. The mandate issued on May 14, 2008.

On September 5, 2008, Pate filed his state motion for post conviction relief *pro se*.

In his motion, Pate argued the following grounds:

**Ground A:**    Ineffective assistance of standby counsel for failing to pursue or convey a plea negotiation;

**Ground B:**    Fundamental error because the jury incorrectly determined the readily ascertainable market value of the grand theft charge;

**Ground C:**    Violation of due process because the State changed the basis of the grand theft charge during closing argument;

**Ground D:**    Ineffective assistance of counsel for failing to argue the value of the check during closing and failing to object to the jury's incorrect determination of the check's value;

**Ground E:**    Ineffective assistance of counsel for failing to object to the State's changing of the particulars of the grand theft charge during closing;

**Ground F:**    Ineffective assistance of counsel for failing to depose and prepare for the State's witnesses at sentencing;

**Ground G:**   Violation of due process because the state failed to provide a proper presentence report;

**Ground H:**   Improper bias because the sentencing court failed to adopt the jury's finding of fact;

**Ground I-1:**  Newly discovered evidence that the jury discussed the case before deliberating; and

**Ground I-2:**  Newly discovered evidence that the State withheld favorable evidence.

On December 17, 2008, the state post conviction court filed a non-final order on Pate's motion. On January 5, 2009, Pate filed a motion for rehearing, which the court struck on February 10, 2009.

On September 10, 2009, the court vacated its order denying Pate's motion to extend deadline and dismissed, without prejudice, claim F of Pate's motion for post conviction relief. On September 16, 2009, the court filed its final order denying Pate's motion for post conviction relief. On September 25, 2009, Pate filed both a motion to rehear his post conviction relief challenge and an amended motion for post conviction relief as to ground F. The state court denied Pate's claim F on February 22, 2011.

On October 21, 2009, Pate filed his *pro se* notice of appeal. On December 3, 2010, the state appellate court affirmed the denial of post conviction relief *per curiam*. Pate filed a motion for rehearing on December 16, 2010, which was granted on February 4, 2011. On May 20, 2011, the state appellate court again affirmed *per curiam*. Pate's motion for rehearing, filed on July 27, 2011, was denied on August 11, 2010. The mandate issued on September 28, 2011.

On December 30, 2010, Pate filed his second amended motion for post conviction relief. Then, on January 5, 2011, he filed his supplement to the second amended motion

for post conviction relief. On February 28, 2011, the state court denied Pate's supplement to the second amended motion for post conviction relief/motion to correct sentence.

Pate filed a motion to rehear the amended motion for post conviction relief and supplement on March 2, 2011. The state court denied this motion to rehear on March 15, 2011. Pate then filed a motion to consider his post conviction claims as a petition for writ of habeas corpus based on ineffective assistance of appellate counsel.

On September 28, 2011, the state court dismissed Pate's second amended motion for post conviction relief. Pate filed a motion for rehearing on October 3, 2011, which was denied on October 20, 2011.

Pate filed the present petition for writ of habeas corpus on December 30, 2011. His amended petition was filed on February 9, 2012.

## <u>STANDARD OF REVIEW</u>

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective as of April 24, 1996, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). The Supreme Court has cautioned that § 2254 does not make federal courts "forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).

Where a state court initially considers the issues raised in the petition and enters a decision on the merits, Section 2254(d) governs the review of those claims. *Price v. Vincent*, 538 U.S. 634, 638 (2003). A federal court may grant a § 2254 petition only if (1)

the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) the state decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See Price v. Vincent*, 538 U.S. at 638-39; *Maharaj v. Sec'y for the Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

In *Putnam v. Head*, 268 F.3d 1223 (11th Cir. 2001), the Eleventh Circuit discussed the meaning of the "contrary to" and "unreasonable application" clauses of § 2254(d)(1):

> A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case.

*Putnam*, 268 F.3d at 1241.

Section 2254 establishes a highly deferential standard for reviewing state court judgments. *Parker v. Sec'y for the Dep't of Corr.*, 331 F.3d 764, 768 (11th Cir. 2003). If a federal court concludes that a state court applied federal law incorrectly, it may grant habeas relief only if that application was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). Even when a state court decision is not accompanied by an explanation, the petitioner's burden "must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011). Moreover, a state court's factual findings shall be presumed correct, and the habeas

petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable

*Strickland*, 466 U.S. at 687.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.

Petitioner must demonstrate that counsel's error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Counsel is not ineffective for failing to raise a non-meritorious claim. *Diaz v. Secretary for the Dept. of Corrections*, 402 F.3d 1136 (11th Cir. 2005).

The Supreme Court recently observed that "surmounting *Strickland*'s high bar is never an easy task," and review under the AEDPA is doubly deferential. *Harrington*, 131 S.Ct. at 787. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 788.

## DISCUSSION

**Timeliness:**

Pate timely filed the present petition pursuant to the one-year limitation period of 28 U.S.C. § 2244(d)(1), as amended by AEDPA.

**Ground One:**   Pate's Sixth Amendment right to counsel was violated because the *Faretta* warning was inadequate.

In support of ground one, Pate argues that the trial court violated his right to counsel during the pretrial period because his request to proceed *pro se* was left unresolved until the day of trial. According to Pate, the court neither granted nor denied

his request at the pretrial hearing, but later judges made Pate represent himself. Pate claims the later judges ordered counsel to standby without withdrawing counsel, granting Pate's request, or making sure Pate was making a knowing, intelligent, and voluntary choice to proceed *pro se*.

The *Faretta* standard is satisfied "if the record shows that a defendant knowingly and voluntarily elected to represent himself." *Nelson v. Alabama*, 292 F.3d 1291, 1297 (11th Cir. 2002). The "ultimate test" is the "defendant's understanding," not "the adequacy of the trial court's warning." *Jones v. Walker*, 540 F.3d 1277, 1293 (11th Cir. 2008) (quoting *Fitzpatrick v. Wainwright*, 800 F.2d 1057 (11th Cir. 1986)).

In this case, Pate repeatedly asserted his desire to represent himself and the state court questioned him about his choice. At the hearing on Pate's motion to withdraw counsel and proceed *pro se*, Pate told the court that he had represented himself before, stated that he understood the magnitude of his request, and indicated that he had had plenty of time to reflect on his decision. After speaking with Pate about his request to represent himself, the court explicitly stated that Pate's motion was granted. Record on Appeal (Dkt. #19, Ex. 35 (Supp.)), p. 526. Pate then raised the question of having the court appoint standby counsel and the court left that issue to be decided later. At a bond hearing on October 31, 2006, Ms. Shea from the public defender's office was appointed as standby counsel.

Immediately before trial began, a different judge made another *Faretta* inquiry and Pate again explained that he wished to represent himself. The court also recognized that Ms. Shea would be Pate's standby counsel during the trial.

The record reflects that Pate knowingly, voluntarily, and intelligently chose self-representation. He was extremely involved in his defense. He drafted and argued numerous *pro se* motions, in which he cited and discussed cases to the court. He had the assistance of his standby counsel at multiple pretrial hearings and during trial. His interactions with the court demonstrated that he was educated and intelligent. He was able to understand the risks of a *pro se* defense. He was aware of the law of his case, the full extent of the case against him, his possible defenses, and the law on waiver of counsel.

The state decision was not contrary to or an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts. Accordingly, this ground fails.

**Ground Two:**   Pate's due process and fair trial rights were violated because of multiple discovery violations.

In support of ground two, Pate argues that the State committed multiple discovery violations and the trial court failed to conduct a proper hearing to determine prejudice. Pate complains that the State failed to disclose Bonnie Stanton as a witness until the day of trial, and failed to disclose that a plea deal had been entered with Stanton's son requiring that Stanton testify against Pate. Pate also complains that the State failed to disclose the wage and earnings statements it attempted to use in order to show that Pate's lack of income was motive for the alleged crimes.

A state court's interpretation of its own laws and rules does not provide a basis for federal habeas corpus relief, but it is necessary to consider a claim of fundamental

unfairness as a federal constitutional issue. *Machin v. Wainwright*, 758 F.2d 1431 (11th Cir. 1985). Review on such a claim is narrowly limited to determining whether the trial was so unfair as to involve a violation of due process. *Id.*

Pate has failed to show that his due process rights were violated. There is nothing in the record to verify Pate's allegation that Ms. Stanton was required to testify pursuant to a plea deal between the State and her son. However, the record does indicate that Pate was sent a witness list that included Bonnie Stanton a week before trial. Ms. Stanton was listed as a witness on January 25, 2007, and Pate acknowledged that he received the list the day before trial.

In addition, Ms. Stanton's testimony did not introduce any facts not already known to the defense, and nothing about her testimony indicates any potential prejudice suffered by Pate. Pate has failed to show that her testimony impacted his ability to adequately prepare for trial.

Pate also complains about the wage and earnings statement. The prosecutor advised the trial court that he had heard about the statement the day before trial and the fact that Pate was not told about it was completely inadvertent. There was not a risk of surprise to Pate because Pate would be aware of his own wage and earnings. *See Machin*, 758 F.2d at 1434 (noting that "the statement was equally within the defendant's own knowledge"). Additionally, after sustaining a hearsay objection to the wage and earnings statement, the trial court gave a curative instruction telling the jury to disregard the testimony about the wage and earnings statement. The alleged surprise disclosure did not

render Pate's trial fundamentally unfair in terms of the constitutional guarantee of due process.

The state decision was not contrary to or an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts. Accordingly, this ground fails.

**Ground Three:**      Pate's due process and fair trial rights were violated because the trial court abused its discretion when overruling Pate's objection to Detective Martin's testimony.

In support of ground three, Pate argues that Detective Martin testified about purported wage and earnings statements showing Pate's lifetime earnings were less than $4,000. At trial, Pate objected to this testimony as hearsay not within any exception, but the trial court overruled Pate's initial objection. Pate claims the trial court's error was not harmless and undermined the whole trial.

Pate fails to establish that the wage and earnings testimony was sufficiently prejudicial to violate his due process rights. Although the trial court overruled Pate's initial objection to the wage and earnings statement, Pate's renewed objection at the conclusion of Martin's direct examination was sustained. The trial court found that the information was hearsay because the State failed to properly authenticate it, and the court instructed the prosecutor not to discuss the statement in further questioning or closing argument.

In addition, after Pate asked for a curative instruction at the end of Martin's direct examination, the court instructed the jury to disregard the testimony about the wage and earnings statement. When a court issues a curative instruction to disregard inadmissible

evidence, there is a presumption that the jury will follow it "unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant." *Greer v. Miller*, 483 U.S. 756, 767, n. 8 (1987). Pate is unable to establish that the jury was incapable of obeying the court's instruction.

Nor can Pate establish that the evidence was "devastating" to his case. The testimony regarding the wage and earnings statement was isolated. It was not repeated by other witnesses, nor was it mentioned during closing argument. Under these circumstances, it was sufficient for the trial court to give the instruction to disregard the testimony. Pate has failed to establish that his trial was fundamentally unfair or that his due process rights have been violated.

The state decision was not contrary to or an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts. Accordingly, this ground fails.

**Ground Four:**    Pate's due process and fair trial rights were violated because of the admission of hearsay statements from two witnesses.

In support of ground four, Pate argues that the admission of hearsay statements during the testimony of Bonnie Stanton and Cindy Fenwick resulted in reversible error. While Pate claimed that there was no kidnapping because the victim voluntarily accompanied him, there was testimony from two witnesses that the victim told them he was kidnapped. Pate also complains about the prosecutor's use of the word "kidnapping"

during his questioning of Fenwick. Pate contends that the testimony was hearsay and its admission was unfairly prejudicial.

In federal habeas proceedings, this Court does not sit as an appellate court to determine evidentiary issues unless they rise to a constitutional magnitude. Relief is warranted only if the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). Therefore, habeas relief is not warranted where the state's references to inadmissible evidence were infrequent and cumulative of admissible evidence, evidence of guilt was weighty, and other circumstantial evidence pointed to guilt. *Id.* at 639. When viewed in light of the overall strength of the State's case and the presence of corroborating evidence, Pate's claim has failed to establish any injurious effect on the jury's verdict.

In this case, the allegedly improper statements were merely cumulative to the testimony of the victim and Mr. Detone. The information was not prejudicial to Pate since other evidence linking him to the crime was admitted. Moreover, the trial court sustained Pate's objection and instructed the prosecutor not to use the word "kidnapping" in his questions. While the prosecutor's use of the word "kidnapping" during his questioning was unnecessary, no prejudice resulted form these comments since they were brief and immediately reprimanded by the trial court. Pate has failed to establish that his trial was fundamentally unfair or that his due process rights have been violated.

The state decision was not contrary to or an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts. Accordingly, this ground fails.

**Ground Five:**     Pate's due process and fair trial rights were violated because the State was late in amending the criminal information.

In support of ground five, Pate argues that the trial court violated his rights by allowing the State to amend its felony information on the day that the trial began. Pate was originally charged with kidnapping and aggravated assault, and the amended information added the charge of first-degree grand theft. Pate claims that he was prejudiced by the late amendment because he could have put on a better defense if he had more time.

Under Florida law, the State may amend its information pretrial, or even during trial, unless the defendant is prejudiced. *Dean v. Secretary Dept. of Corrections*, 2011 WL 4480650 (M.D. Fla. 2011) (quoting *State v. Clifton*, 905 So.2d 172, 178-79 (Fla. 5th DCA 2005)). Pate is unable to establish that the amended information prejudiced his defense.

In this case, the amendment did not drastically change the elements of proof on the morning of trial. Under either the original or the amended information, the State was required to prove that Pate kidnapped the 65-year-old victim and made him give Pate $100,000. The State was relying on the same facts and circumstances for the additional charge, and the added charge did not prejudice Pate's defense or the preparation of his case.

Even if the amended information were prejudicial to Pate, the prejudice would have entitled him to a continuance, not a dismissal of the amended information. *Dean*, 2011 WL 4480650 (M.D. Fla. 2011). Before trial, Pate objected to the amended information but he explicitly stated that he did not want a continuance. Record on Appeal (Dkt. #19, Ex. 35 (6)), p. 55. Pate has failed to establish that his trial was fundamentally unfair or that his due process rights have been violated.

The state decision was not contrary to or an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts. Accordingly, this ground fails.

**<u>Ground Six:</u>**        Trial counsel rendered ineffective assistance by failing to convey a pretrial plea offer.

In support of ground six, Pate argues that during the weeks prior to trial he asked Ms. Shea, the public defender, to inquire with the state and convey his desire to negotiate a plea deal. Ms. Shea did not convey that the State was amenable to a deal, but informed Pate that the State wanted a life sentence. Pate explains that based on this information he proceeded to trial. He claims that during trial, he discovered the State had been amenable to a pretrial plea deal at a minimum guideline sentence, which Pate would have accepted. Pate bases his belief on a statement made by the prosecutor mid-trial that the State would not be willing to make a deal at the bottom of the guidelines "anymore". Pate contends he missed the opportunity to reach a deal because Ms. Shea failed to convey the willingness to negotiate.

Under federal law, "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Faretta*, 422 U.S. at 834, n. 46. The state post conviction court found that the alleged deficient performance occurred when Pate was already representing himself. The court explained that by proceeding *pro se*, Pate "assumed responsibility for all aspects of his defense, including inquiry into possible plea deals." Non-Final Order on Defendant's Motion for Post Conviction Relief (Dkt. #19, Ex. 8), p. 3. Pate has failed to establish that counsel owed him any professional duty at the time he claims he was interested in plea negotiations.

The state decision was not contrary to or an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts. Accordingly, this ground fails.

**<u>Ground Seven:</u>**   Trial counsel rendered ineffective assistance by failing to object to the jury's incorrect determination of the item taken and failing to argue the fair market value of the item.

In support of ground seven, Pate argues that the item taken was only a worthless check that bounced and then had a stop payment order placed on it. Pate explains that he reasserted his right to counsel prior to concluding his case, so Ms. Shea was his counsel for closing arguments. He claims that if she had argued about the fair market value of the check in closing, the jury would have found him not guilty of grand theft. Pate also contends that if his counsel had objected to the jury's incorrect value determination, the court would have overruled the jury's determination.

The state post conviction court found that Pate failed to establish ineffective assistance of counsel for failing to move for acquittal. The court noted that when Pate requested counsel be reappointed, it was with the express purpose of counsel arguing the defense theory at closing. Therefore, counsel did not need to move for acquittal to be effective. Even so, after resting the defense's case, counsel did move for acquittal. She explained that she did not have a motion for acquittal fully prepared and had to rely on Pate's previous work. The state post conviction court found "no error in counsel's performance as to the quality or thoroughness of her motion for acquittal." Non-Final Order (Dkt. #19, Ex. 8), p. 4.

The state post conviction court also found that counsel's failure to argue that the State did not establish the value of the theft was not ineffective assistance. The court explained that the value was properly introduced. The victim testified that he had written, under duress, a personal check to Pate in the amount of $100,000 and the State introduced a copy of the check as evidence. Therefore, the court denied Pate's claim. Non-Final Order (Dkt. #19, Ex. 8), p. 4.

The state decision was not contrary to or an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts. Accordingly, this ground fails.

**<u>Ground Eight:</u>**   Pate's trial counsel rendered ineffective assistance by failing to object to the State changing the particulars of the grand theft charge during closing argument.

In support of ground eight, Pate argues that while discussing the amended information before trial, the State clearly explained that the added grand theft charge was

based on the $100,000 check. In closing, the State argued that the grand theft could be based on the sale of the personal stock that the victim executed to fund the check as well. Pate contends that if his counsel had objected to this change, the court would have instructed the jury that the check, which Pate claimed was worthless, was the subject of the grand theft charge.

The state post conviction court found that counsel had no basis to enter an objection on these grounds. During the pretrial hearing on the amended information, the State argued that the theft was either committed when Pate coerced the victim to write him a personal check or when Pate attempted to acquire the victim's stock. Record on Appeal (Dkt. #19, Ex. 35 (6)), p. 46-48. During trial the State presented evidence to support either theory and Pate's counsel had no basis to object to the State's closing argument regarding the two theories for grand theft. Non-Final Order (Dkt. #19, Ex. 8), p. 4. Pate's counsel cannot be ineffective for failing to raise a non-meritorious objection. *See Diaz v. Secretary for the Dept. of Corrections*, 402 F.3d 1136 (11th Cir. 2005).

The state decision was not contrary to or an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts. Accordingly, this ground fails.

**<u>Ground Nine:</u>**    Trial counsel rendered ineffective assistance when she failed to depose witnesses for sentencing.

In support of ground nine, Pate argues that his counsel was ineffective for failing to depose Jason Marendola and Kimberly Kingsbury before the sentencing. At the conclusion of trial, the State gave Pate's counsel notice that she was free to depose their

witnesses. According to Pate, his counsel briefly spoke with the witnesses at the sentencing but this was not enough to be properly prepared. Pate claims that if his counsel had deposed and impeached these witnesses, the trial court would not have sentenced him to the maximum sentence.

The state post conviction court found that Pate failed to show how defense counsel was deficient or how he was prejudiced. Orders (Dkt. # 19, Exs. 8, 18, 32). The court noted that Pate failed to explain why he did not tell his counsel about the allegations against him, which he knew would be presented by the sentencing witnesses. Even without receiving that information, Pate's counsel thoroughly cross-examined both Marendola and Kingsbury, without excessive focus on the inflammatory claims they made on direct. Additionally, both Pate and his wife had an opportunity to give their version of the events testified to by Marendola and Kingsbury.

The post conviction court also found that the sentencing court did not rely on the testimony of Marendola and Kingsbury in imposing the sentence. Instead, the court considered the facts of the crime as developed at trial and Pate's prior criminal history. Pate failed "to show that counsel was ineffective or that his sentence would have been different absent counsel's alleged errors." Order Denying "Claim F" of Defendant's Motion for Post Conviction Relief (Dkt. #19, Ex. 18), p.

The state decision was not contrary to or an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts. Accordingly, this ground fails.

**Ground Ten:**     Pate's due process right was violated because there was an erroneous presentence report.

In support of ground ten, Pate argues that the presentence report (PSI) erroneously led the court to believe that he had prior convictions for, among other things, false imprisonment, contempt, and interference with child custody, and that his counsel allowed the court to have this belief. Pate claims that he advised his counsel of the PSI errors. Pate contends that a proper PSI would have changed the opinion of the sentencing judge and led to a shorter sentence.

The state post conviction court found that this claim was procedurally barred. This issue "could have been brought to the [c]ourt's attention during the trial court proceedings and raised on appeal. Thus, [Pate] is barred from raising this issue now." Non-Final Order (Dkt. #19, Ex. 8), p. 6. Under Florida law, claims that could have been raised on direct appeal may not be reviewed in a rule 3.850 motion. *Harmon v. Barton*, 894 F.2d 1268, 1270 (11th Cir. 1990).

"A state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). Pate does not overcome this procedural bar because he fails to establish that there was cause or prejudice to excuse his procedural default, or that he was actually innocent.

Therefore, review of ground ten is foreclosed by Pate's procedural default.

Even if this claim were not procedurally barred, Pate cannot establish that the sentencing was so unfair as to involve a violation of due process. *See Machin*, 758 F.2d 1431. The sentencing court explicitly went over Pate's previous convictions mentioned in the PSI. The court noted that Pate was convicted of reckless driving, fleeing and eluding, a DUI, leaving the scene of an accident, driving on a suspended or revoked license, petty theft and trespassing. There is nothing in the record to indicate that these convictions are incorrect.

In addition, according to the PSI and Pate's own admission, (Dkt. #19, Ex. 35(5)), p. 66, Pate was convicted of robbery in 1991. Although there was some initial confusion about a false imprisonment charge, the court concluded that there was one conviction for interference with child custody. This conviction was initially charged along with kidnapping, but the State agreed to a nol-pros on that charge in exchange for a plea on the child custody charge. With respect to the contempt of court conviction, Pate personally informed the court that it "involv[ed] the child custody stuff." (Dkt. #19, Ex. 35(5)), p. 72. The crimes to which Pate admitted at sentencing are the major offenses in his criminal conviction history. Pate fails to demonstrate that his due process rights were violated by the consideration of these convictions at sentencing.

Pate fails to establish that the sentencing court was violating his due process rights when it sentenced him to a maximum guidelines sentence based on the horrendous facts of the case and Pate's criminal history. Accordingly, this ground fails.

**Ground Eleven:**     There was a violation of *Apprendi – Blakely*.

In support of ground eleven, Pate argues that the jury rejected the victim's testimony and the State's theory of aggravated assault with a firearm. According to Pate, the jury made a factual determination that there was no firearm and found him guilty of only simple assault. At sentencing the court stated that the claim that a firearm was used may or may not be true. The sentencing court cited the use of a firearm or the victim's subjective belief of one as factors for imposition of the maximum sentence. Pate claims that this violated the constitutional function of the jury.

Pate presented this claim as ground H in his state motion for post conviction relief. In that motion, Pate labeled the claim as "improper bias" and argued that the sentencing court "substituted it's own judgment and belief for that of the jury's." Motion for Post Conviction Relief (Dkt. #19, Ex. 6), p. 17. The state post conviction court denied Pate's claim of judicial bias as procedurally barred because Pate could have objected during sentencing and raised the issue on direct appeal.

Review of ground eleven is foreclosed by Pate's procedural default for the same reasons discussed above in ground ten.

Even if this claim were not procedurally barred, Pate has failed to establish any *Apprendi-Blakely* violation. The record shows that the court sentenced Pate within his guidelines range, which was a minimum of 86.1 months and a maximum of life in prison. Pate's sentence did not exceed the maximum sentence that the judge could impose solely on the basis of the facts reflected in the jury verdict. *See Blakely v. Washington*, 542 U.S. 296, 303-04 (2004).

Accordingly, this ground fails.

**Ground Twelve:**     There was a *Brady* violation.

In support of ground twelve, Pate argues that the state withheld the fruit of Pate's subpoenas, which contained evidence favorable to him. The evidence included United States patent documents, which would have verified the existence of several pending patents, and notes written by the victim indicating that business negotiations were occurring. Pate claims that the State interfered with his mail and prevented these documents from being delivered to him. He explains that he would have used the evidence to show that the victim was reneging on a business deal and fabricating the kidnapping. Pate contends that if he had been able to present this evidence, the jury would have found him not guilty.

The state post conviction court found that there was no *Brady* violation. At the time of trial, Pate had knowledge of the patent applications and documentation concerning the company he owned, and the State cannot be said to have suppressed evidence of which the defendant himself had knowledge. During trial, the State did not contest the existence of the patents. Testimony concerning Pate's patents and company was presented through Detective Martin, who acknowledged that Pate held some patents. Pate also fails to explain why he was unable to get the patent documents, which were his own documents, some other way. The court concluded that Pate failed to demonstrate a reasonable probability that, in light of the entire record, the jury verdict would have been different had the information allegedly suppressed by the State been used at trial. Final

Order Denying Defendant's Motion for Post Conviction Relief (Dkt. #19, Ex. 14), pp. 3-4.

The post conviction court also found that there was not a *Brady* violation regarding the notes written by the victim. Before the trial began, Pate received the notes from the same person who had tried to send them a few weeks earlier. Pate claims that the State deliberately caused this piece of mail to be returned to sender. Pate brought the documents to the attention of the trial court and the court did not exclude the evidence, leaving Pate the option of introducing the notes or questioning the victim about them. However, Pate never attempted to introduce the handwritten notes into evidence or question the victim about the documents during his extensive cross-examination. Final Order (Dkt. #19, Ex. 14), pp. 4-5.

The state decision was not contrary to or an unreasonable application of federal law, and it was not based on an unreasonable determination of the facts. Accordingly, this ground fails.

**Ground Thirteen:**   Pate's sentence was the result of vindictive sentencing.

In support of ground thirteen, Pate argues that mid-trial, after the victim had testified to the facts of the case, there was a failed plea discussion where Pate was seeking a non-prison sentence. During this discussion, the trial court stated that it would accept any sentence agreed upon. The court made no caveat that it's acceptance would depend on any further review. At sentencing the same judge gave Pate the maximum sentence based on the "horrendous" facts of the case and the criminal history of Pate.

Pate claims that the disparity between the deal that he was seeking and the ultimate sentence imposed demonstrates that there was vindictive sentencing.

Pate's claim in ground thirteen is procedurally barred. Pate raised this claim in state court only in his second amended motion for post conviction relief, which was filed outside the two-year time limit set by Fla. R. Crim. P. 3.850. The state post conviction court "properly applied a regularly followed procedural default principle and found that the supplemental post conviction motion was untimely." *Anderson v. Secretary of the Fla. Dept. of Corrections*, 2011 WL 794842 (M.D. Fla. 2011) (supplemental claims were properly dismissed when Petitioner intended to raise new claims, not merely expand upon the timely filed claims).

"A state habeas corpus petitioner who fails to raise his federal claims properly in state court is procedurally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default." *Bailey v. Nagle*, 172 F.3d 1299, 1302 (11th Cir. 1999) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). Pate does not overcome this procedural bar because he fails to establish that there was cause or prejudice to excuse his procedural default, or that he was actually innocent. Therefore, review of ground thirteen is foreclosed by Pate's procedural default.

Moreover, even if ground thirteen were not procedurally barred, Pate fails to establish any vindictive sentence. Pate mischaracterizes the court's involvement with a plea deal. The portion of the trial transcript on which Pate bases this claim shows only that the court would not oppose a plea agreement, not that the court advocated any

particular sentence. Later, at sentencing, the court properly sentenced Pate to the high end of the guidelines range. Accordingly, this ground fails.

**Ground Fourteen:** Pate's due process rights were violated because there was prosecutorial vindictiveness.

In support of ground fourteen, Pate argues that the prosecutor would not offer him a good plea deal because he chose trial and forced evidence to be presented. Pate claims that the vindictiveness is demonstrated by the prosecutor's comment that after having put the victim on the stand, the State would not make an offer even at the bottom of the guidelines anymore. Pate contends that the prosecutor's use of the word "anymore" establishes that the State was being vindictive.

This claim is procedurally barred for the same reasons discussed above in ground thirteen. Therefore, review of ground fourteen is foreclosed by Pate's procedural default.

Moreover, even if ground fourteen were not procedurally barred, Pate fails to establish any prosecutorial vindictiveness. The portion of the trial transcript on which Pate bases this claim does not indicate that the State, at some previous time, had extended or considered a minimum range sentence. It shows only that the state would categorically deny any plea offer from the defense that was at the minimum prison sentence level at such a late stage in the proceedings. Accordingly, this ground fails.

**Ground Fifteen:** Trial counsel rendered ineffective assistance because she failed to object to the court's lack of an order granting Pate's motion to withdraw counsel and proceed *pro se*.

In support of ground fifteen, Pate argues that the trial court failed to clearly grant or deny his motion to proceed *pro se* and his counsel was ineffective for failing to object.

As a result, Pate was confused and misled about his *pro se* status and his counsel's standby status. Pate claims that because of his counsel's failure to object, he was allowed to proceed *pro se* without making a knowing, voluntary, and intelligent decision.

Under prior law, this claim would have been procedurally barred for the same reasons discussed above in ground thirteen, and review of ground fifteen would have been foreclosed. However, in the supplement to his reply, Pate argues that his procedural default does not bar his claims of ineffective assistance of trial counsel. Pate calls attention to a recent Supreme Court case, in which the Court states:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez v. Ryan*, 132 S.C.t 1309, 1320 (2012). A claim of ineffective assistance of trial counsel is "substantial" if the petitioner demonstrates "that the claim has some merit." *Id.* at 1318. Therefore, this Court will consider the merits of Pate's ineffective assistance of trial counsel claims.

Pate fails to establish that his claim in ground fifteen is substantial. As discussed above in ground one, the state court did grant Pate's motion to withdraw counsel and proceed *pro se*. Pate cannot complain that he was denied effective assistance of counsel when he was already representing himself. *See Faretta*, 422 U.S. at 834, n. 46. Accordingly, this ground fails.

**Ground Sixteen:**     Trial counsel rendered ineffective assistance when she failed to object to Pate's presumptively vindictive sentence.

In support of ground sixteen, Pate argues that his counsel was aware that during the failed mid-trial plea negotiations, the court made no caveat when it said that it would approve any deal the parties agreed upon. Pate claims that if his counsel had objected to the sentence, he would have received a lower, non-vindictive sentence.

As discussed above in ground fifteen, this claim would have been procedurally barred under prior law. Based on *Martinez*, however, this Court will consider the merits.

Pate fails to establish that his claim in ground sixteen is substantial. As discussed above in ground thirteen, no vindictiveness has been established. Counsel is not ineffective for failing to raise a non-meritorious claim. *Diaz*, 402 F.3d 1136 (11th Cir. 2005).  Accordingly, this ground fails.

**Ground Seventeen:**     Trial counsel rendered ineffective assistance when she failed to object to the prosecutorial vindictiveness.

In support of ground seventeen, Pate argues that his counsel was aware of the prosecutor's comment that after having put the victim on the stand, the State would not make an offer even at the bottom of the guidelines anymore. Pate claims that his counsel should have objected and that if she had, the court would have been forced to sentence him to a minimum guideline sentence.

As discussed above in ground fifteen, this claim would have been procedurally barred under prior law. Based on *Martinez*, however, this Court will consider the merits.

Pate fails to establish that his claim in ground seventeen is substantial. As discussed above in ground fourteen, no prosecutorial vindictiveness has been established.

Counsel is not ineffective for failing to raise a non-meritorious argument. *Diaz*, 402 F.3d 1136. Accordingly, this ground fails.

**Ground Eighteen:** Trial counsel rendered ineffective assistance by failing to object to the *Apprendi – Blakely* violation at sentencing.

In support of ground eighteen, Pate argues that his counsel knew that he was not found guilty of the firearm portion of the charges against him, but failed to object to the court's determination that there may have been a firearm used. Pate claims that the court, in part, based Pate's life sentence on that determination. According to Pate, if his counsel had objected, his maximum sentence would have been reduced.

As discussed above in ground fifteen, this claim would have been procedurally barred under prior law. Based on *Martinez*, however, this Court will consider the merits.

Pate fails to establish that his claim in ground eighteen is substantial. As discussed above in ground eleven, no *Apprendi—Blakely* violation has been established. Counsel is not ineffective for failing to raise a non-meritorious argument. *Diaz*, 402 F.3d 1136. Accordingly, this ground fails.

## CONCLUSION

It is therefore ORDERED AND ADJUDGED that:

1. The amended petition for writ of habeas corpus (Dkt. #7) is DENIED.

2. The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED.

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

F:\Docs\2011\11-cv-2867 deny 2254.doc